# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

**MICKEY F. MITCHELL,**

    **Plaintiff,**

vs.                                    **CIVIL ACTION NO. 5:18-CV-00074**

**UNITED STATES,**
**DR. RONALD C. MOTLEY,**
**DR. DAVE CHAITANYA, and**
**KARIN MCGRAW,**

    **Defendants.**

## **PROPOSED FINDINGS AND RECOMMENDATION**

This case concerns a medical negligence action brought against Defendants involving alleged medical malpractice, more specifically, that the above-named Defendants failed to provide the appropriate treatment or care for Plaintiff's conditions over a period of ten or more years when Plaintiff was seen at the Beckley Veterans Affairs Medical Center ("VA"). By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3)

The first matter pending before this Court is the ***United States' Motion to Dismiss Dr. Ronald C. Motley, M.D., Dr. Dave Chaitanya, M.D., and Karin McGraw and Substitute the United States***, filed on February 8, 2018. (ECF No. 12) On February 8, 2018, the undersigned issued a Roseboro[1] notice to Plaintiff directing him to file his response to the ***Motion***. (ECF No. 14)

---

[1] Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975); because Plaintiff is acting *pro se*, the Court issued an Order notifying Plaintiff of his right to file a response to the United States' ***Motion*** and further ordered that Plaintiff file any response with the Clerk of this Court. (ECF No. 17)

The second matter before the Court concerns the ***United States' Motion to Dismiss For Failure to Comply with the West Virginia Medical Practice Liability Act***, filed on February 13, 2018. (ECF No. 15) That same day, the Court issued another Roseboro notice to Plaintiff to file his response to the ***Motion***. (ECF No. 17)

On February 21, 2018, Plaintiff filed two motions asking for ninety (90) day extensions for filing his responses to the United States' pending ***Motions*** due to upcoming spinal surgery. (ECF Nos. 19 and 20) The undersigned granted Plaintiff's requests for extension of time, and ordered that he file his responses no later than May 22, 2018. (ECF No. 21) On May 21, 2018, Plaintiff filed two additional motions requesting a sixty (60) day extension of time to file his responses to the United States' pending ***Motions*** due to his ongoing recovery from surgery. (ECF Nos. 23 and 24) Again, the undersigned granted Plaintiff's requests for extension of time and ordered that he file his responses no later than July 23, 2018. (ECF No. 25)

On July 23, 2018, Plaintiff filed his responses to the United States' ***Motions***.[2] (ECF Nos. 26 and 27) Having examined Plaintiff's Complaint, the responsive pleadings and having consulted the pertinent legal authorities herein, the undersigned recommends that the United States' ***Motions*** should be **GRANTED** for the reasons explained *infra*. (ECF Nos. 12 and 15)

**Procedural and Factual Background**

---

[2] On July 23, 2018, Plaintiff also filed a "***Motion For Clarification As To What Plaintiff Is Ordered To Do And If It Is Now Time For Discovery And Interrogatories, Depositions, And Document Productions Plaintiff Requests An Additional 90 Day Extension To Prepare, And Prayerfully This Will Be Plaintiff's Final Request For Extension Of This Matter***". (ECF No. 28) To the extent that Plaintiff seeks another ninety days to conduct discovery and/or "familiarize himself with the law" in order to prosecute this civil action, for the reasons stated in this Proposed Findings and Recommendation, Plaintiff's ***Motion*** is hereby **DENIED as MOOT**. (ECF No. 28)

On January 22, 2018, Plaintiff, acting *pro se*,[3] filed a Complaint (ECF No. 1) seeking relief pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671, *et seq*.[4] Plaintiff alleges that since at least 2008, Defendants delayed treatment for his urinary obstruction that "AT LEAST AS LIKELY AS NOT" caused his recently discovered diagnosis of "Retrograde Ejaculation". (ECF No. 1 at 5)

Plaintiff specifically sues Defendant Motley "due to the fact that he was aware of my diagnoses as evident by the consults, labs and ultrasounds yet he NEVER saw me or physically evaluated me. And he NEVER did a cystoscopy on me nor did he order one for somebody else to do." (Id. at 7) Plaintiff further alleges that he discovered in November 2014 that he had a urinary obstruction that had been diagnosed in February 27, 2008 "by Dr. Dhaliwal" at the Beckley VA Medical Center and never informed of this diagnosis; Plaintiff was "also diagnosed with chronic renal failure and was never informed about this either." (Id.) Due to Dr. Motley's negligence by delaying Plaintiff's treatment for "7 years", Plaintiff alleges that "at least as likely as not lead to me having to have immediate TURP surgery, complications from the surgery that lead to 2 non-va ER visits and ultimately @ least as likely as not me being left with Retrograde Ejaculation." (Id. at 8)

Plaintiff asserts that Dr. Faith Payne, an outside provider, performed a cystoscopy on March 13, 2015 and determined that he had an obstructed bladder outlet and performed the TURP surgery on March 25, 2015. (Id.) Plaintiff experienced complications from the surgery and went to the emergency room twice, on March 29, 2015 and again on April 1, 2015. (Id. at 9)

---

[3] Because Plaintiff is acting *pro se*, the documents he has filed in this case are held to a less stringent standard than had they been prepared by a lawyer, therefore, they are construed liberally. See Haines v. Kerner, 404 U.S. 519, 520-521 (1972).

[4] The FTCA authorizes suits against the United States for damages for injuries or loss of property or personal injury or death caused by the negligent or wrongful act of omission or employment under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred.

Plaintiff further states that he learned in November 2014 that during a hospital admission in December 2011 that he was actually in "acute renal failure", although neither he nor his wife were aware of this; "Dr. Amjad consulted Dr. Motley to come see me due to being in Renal Failure & having critical labs. Dr. Motley discontinued consult as written in my VA notes." (Id.)

Next, Plaintiff sues Defendant Chaitanya "due to the fact that he had been made aware of my diagnoses as evident by consults and labs and yet he has NEVER seen me or physically evaluated me. He has receives [*sic*] several referrals/consults yet he chose to discontinue them with no further evaluation on his part." (Id. at 9-10) Plaintiff provides several dates[5] of laboratory tests that supported findings of abnormalities that ostensibly support his claims against Defendant Chaitanya for "negligence in delivering care for me and the delay in any treatment" that lead to his deteriorating health. (Id. at 10) Plaintiff alleges that Defendant Chaitanya is negligent for failing to provide proper care for his conditions when he was aware of these "abnormal labs/anemia/Leukopenia etc" and that Defendant Chaitanya is negligent "knowing I've had a positive ANA which was diagnosed to me on September 12, 2003" which "could be LUPUS or some other AUTOIMMUNE DISEASE." (Id. at 11) Plaintiff further asserts that he is unaware of the extent of his injuries because Defendant Chaitanya discontinued every consult that he had been given although Plaintiff needs to see a Hematologist and Defendant Chaitanya "has NEVER physically seen me NOR evaluated me." (Id.)

Plaintiff states that on November 17, 2017 he had been awarded 10% for Ischemic Heart Disease with an effective date of July 12, 2007, and sues Defendant United States (VA) because

---

[5] "Abnormal labs showing Leukopenia beginning 04-17-98"; First positive ANA level on September 12, 2003 which have consistently been positive ever since; "Leukopenia 09-11-03"; "Enlarged Spleen 2003"; "LUTS with Elevated PSA 02-27-08 Dr. Sanjit Dhaliwal"; "Anemia 12-01-09 Carolyn Carter"; "Increased LFT (Liver Function Test) 04-08-13"; "US ABD 04-23-13 Spleen Enlargement suggest Clinical Correlation"; and "Critical abnormal Vitamin D levels as well as Copper levels" (ECF No. 1 at 10)

4

"the VA has NEVER acknowledged it as part of my heart disease for my Agent Orange." (Id. at 12) Plaintiff alleges that Defendant United States' negligence contributed to his injuries by failing to adhere to the standard of care by having him see a cardiologist on a regular basis. (Id. at 13) In addition, Plaintiff asserts that "the unnecessary delays have worked on my PTSD as well as other issues with my Mental and Physical well being." (Id.)

Finally, Plaintiff sues Defendant McGraw who was the VA Director at the time Plaintiff was discovering his health problems and that she "was supposed to make sure that the physicians hired that were working under her administration were competent and were caring for us veterans while acting within their scope of practice, and that the accepted standard of care been afforded not only to me but to every Veteran that seeks care there." (Id.) Plaintiff states that he "made several attempts to talk with [Defendant McGraw] but she never not one time talked with me." (Id.)

As relief, Plaintiff requests 3.5 million dollars for himself and his wife. (Id. at 4, 5)

As stated *supra*, Defendants (hereinafter "United States") filed its **_Motion to Dismiss Dr. Ronald C. Motley, M.D., Dr. Dave Chaitanya, M.D., and Karin McGraw and Substitute the United States_** as well as a **_Motion to Dismiss For Failure to Comply with the West Virginia Medical Practice Liability Act_** and supporting **_Memoranda_**. (ECF Nos. 12, 13, 15, 16) On July 23, 2018, Plaintiff filed his **_Responses_** in opposition (ECF Nos. 26, 27), and on July 26, 2018, the United States' filed its **_Reply_** to Plaintiff's Response to United States' Motion to Dismiss for Failure to Comply with the West Virginia Medical Professional Liability Act. (ECF No. 29) Accordingly, this matter is fully briefed and ripe for decision.

## The Standard

As noted *supra*, Plaintiff is acting *pro se,* therefore, the Court should liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978). However, "[l]iberal construction does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at *3 (N.D.W. Va. 2007) (citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978)). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). "Moreover, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court." Miller, 2007 WL 2050409, at *3 (citing Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir. 1990)).

### The United States' Argument for Substitution

The United States asserts that the named Defendants herein enjoy the immunity from liability under the Federal Employee Liability Reform and Tort Compensation Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* because they were working in the scope of their employment during the period out of which Plaintiff's claims arose. (ECF No. 13 at 1) The United States, through her Attorney, has filed a certification pursuant to 28 U.S.C. § 2679 that these named Defendants were acting within the scope of their office or employment. (ECF Nos. 13 at 2; 12-1) The United States points out that such a certification is "a motion for summary judgment which challenges a plaintiff to come forward with evidence that, if proven, would be sufficient to take the case out of the scope of employment."[6] (ECF No. 13 at 3)

---

[6] Maron v. United States, 126 F.3d 317 (4th Cir. 1997).

6

In response, Plaintiff argues that these named Defendants should remain in this lawsuit but states that "[a]ny employee of the VA is an employee of the government and as long as such an employee harmed a Veteran during the course of care makes this Plaintiff have a valid medical malpractice claim against the VA." (ECF No. 27 at 2) Plaintiff asserts these named Defendants "did not act within the scope of their office, employment or practice". (Id.)

### Discussion

Plaintiff provides no factual allegations that would rebut the *prima facie* evidence that the named Defendants were employees of the VA and were working within the scope of their employment or office while employed by the VA. The undersigned notes that the tenor of Plaintiff's response in opposition to the substitution of the party-Defendants is that he is concerned that by dismissing the named Defendants and substituting the United States in their place will somehow vitiate his claims against them. This proposed findings and recommendation is not an evaluation of Plaintiff's claims against these named Defendants, and the undersigned is not in a position to measure the merit of Plaintiff's claims. However, the certification provided by the United States coupled with Plaintiff's acknowledgement that employees of the VA who do harm to veterans during the course of their care indicates that Plaintiff recognizes that this employer-employee relationship provides him with a claim for medical malpractice against the VA, and therefore and appropriately, the United States. In short, this case must proceed against the United States as provided by law:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, *any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States* under the provisions of this title and all references thereto, *and the United States shall be substituted as the party defendant.*

See 28 U.S.C. § 2679(d)(1) (emphasis added). Accordingly, the undersigned **FINDS** that United States' ***Motion to Dismiss Dr. Ronald C. Motley, M.D., Dr. Dave Chaitanya, M.D., and Karin McGraw and Substitute the United States*** (ECF No. 12) should be **GRANTED**.

### The United States' Argument for Dismissal

Next, the United States succinctly argues that the FTCA provides that the law of the state where the act or omission occurred determines its liability, which in this case is governed under W. Va. Code § 55-7B-1-12, the Medical Professional Liability Act ("MPLA"), therefore, Plaintiff was required to serve upon these named Defendants a notice of claim as well as a screening certificate of merit by certified mail thirty days before filing this action. See, W. Va. Code § 55-7B-6(b). (ECF No. 16 at 3) Alternatively, Plaintiff was required to file his notice of claim with a statement that a screening certificate of merit is not required to establish liability per W. Va. Code § 55-7B-6(c). (Id.) Though Plaintiff could have obtained an additional sixty days to obtain a screening certificate of merit per W. Va. Code § 55-7B-6(d), none of these provisions have been complied with, therefore, dismissal is appropriate. (Id. at 4)

The United States asserts that Plaintiff's claims concern medical malpractice that occurred at the Beckley VA in Beckley, West Virginia, therefore, the mandatory pre-filing notice requirements of the MPLA had to be followed; Plaintiff's failure to comply with the MPLA pre-filing notice provisions therefore requires dismissal of this action. See Davis v. Mound View Health Care, Inc., 640 S.E.2d 91 (W. Va. 2006); Stanley v. United States, 321 F.Supp.2d 805 (N.D.W. Va. 2004). (Id. at 3-4)

The United States asks this action be dismissed due to Plaintiff's failure to serve a notice of claim and/or a screening certificate of merit or for otherwise failing to comply with the MPLA. (Id. at 5)

In response, Plaintiff states he was unaware the he had to provide a screening certificate of merit or otherwise comply with the MPLA. (ECF No. 26 at 1) However, Plaintiff asserts that he "does not wholly believe that a screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liabilities which does not require expert testimony." (Id.) Plaintiff further argues that he has "overwhelming evidence that even a layman could understand" that malpractice was committed by these Defendants and is prepared to call witnesses during the discovery period who can testify as to the deviation of the standard of care. (Id. at 2)

In reply, the United States points out that Plaintiff does not claim to have complied with the pre-filing notice requirements pursuant to the MPLA, but appears to attempt to invoke the provisions of Section 6(c) of the MPLA, however, he also has not complied with these requirements. (ECF No. 29 at 1) Plaintiff basically asserts that evidence obtained during discovery can cure his failure to comply with the MPLA. (ECF No. 29 at 1-2) Though expert testimony is not required for a medical malpractice claim where the lack of care was so gross as to be apparent[7], or involves noncomplex matters of diagnosis and treatment that is understandable to a lay person, the general rule is that medical malpractice can only be proven by expert witnesses. Neary v. Charleston Area Medical Center, 460 S.E.2d 464 (W. Va. 1995) (*per curiam*). (Id. at 2)

Nevertheless, even assuming *arguendo* that Plaintiff's claim falls under Section 6(c), the MPLA required Plaintiff to file a statement specifically setting forth the basis of the alleged liability for the health care provider *before* he filed suit. See W. Va. Code § 55-7B-6(c). (Id. at 2-3) However, a review of Plaintiff's Complaint indicates that Plaintiff's claims do not involve noncomplex medical issues, but demonstrates a lengthy and complex medical history that would

---

[7] See, Farley v. Shook, 629 S.E.2d 739, 744 (W. Va. 2006). (ECF No. 29 at 2)

require the testimony of an expert; further some of Plaintiff's claims may fall outside of the applicable statute of limitations and appear to be based upon speculation. (Id. at 4-5) Regardless of Plaintiff's assertion that unidentified witnesses will file a statement in lieu of a screening certificate of merit during discovery, the MPLA clearly does not authorize such a practice, as noted above, Plaintiff was required to file such statements before he filed suit. (Id. at 5-6)

Plaintiff's failure to comply with the requirements of the MPLA warrants dismissal of this action. (Id. at 6)

## Discussion

Plaintiff's lawsuit clearly concerns allegations of medical malpractice governed under the FTCA. The substantive law of the state where the tort occurred determines the liability of the United States. 28 U.S.C. § 1346(b)(1); See, e.g., Levin v. United States, 568 U.S. 503, 133 S.Ct. 1224, 185 L.Ed.2d 343 (2013). As demonstrated by the United States, the Medical Professional Liability Act ("MPLA"), W. Va. Code § 55-7B-1 *et seq.* applies to the instant matter, since Plaintiff has alleged medical negligence involving his treatment, or lack thereof, of numerous medical conditions.

As noted by the United States, the pre-filing requirements of the MPLA are mandatory. Stanley v. United States, 321 F.Supp.2d 805 (N.D.W. Va. 2004). There is no indication that Plaintiff attempted to comply with the MPLA's mandatory provisions by serving any of the defendants by certified mail, return receipt requested with a Notice of Claim or a Screening Certificate of Merit thirty days before he filed his lawsuit in this Court. Indeed, Plaintiff does not deny that he failed to provide a Notice of Claim or a Screening Certificate of Merit, but instead appears to suggest that certain witness statements will be filed sometime during discovery that can be used in lieu of the Screening Certificate of Merit. However, as pointed out by the United States,

even if Plaintiff's claims fall under Section 6(c) of the MPLA, there is no evidence that Plaintiff attempted to comply with the pre-filing requirements. Plaintiff's failure to abide by the MPLA's mandatory provisions deprives this Court of jurisdiction, therefore, the case must be dismissed. See Miller v. Stone, 607 S.E.2d 485 (W. Va. 2004).

The undersigned appreciates Plaintiff's frustrating struggle with not only his debilitating illnesses, but also with the bureaucratic red tape he endured in his pursuit of appropriate and expedient treatment. The undersigned is also mindful of Plaintiff's obvious commitment to his country and fellow compatriots for having served in the military. Even though Plaintiff may feel as if the VA improperly cared for his medical conditions, unfortunately, the undersigned's hands are tied. Baldwin Ctr. Welcome Center v. Brown, 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.") Regardless, this Court acknowledges Plaintiff's service and extends its gratitude to Plaintiff for same.

Accordingly, the undersigned **FINDS** that since no factual allegations or legal theories have been proffered by Plaintiff that overcome the legal requirements of the MPLA, the United States' ***Motion to Dismiss For Failure to Comply with the West Virginia Medical Practice Liability Act*** (ECF No. 15) should be **GRANTED**.

## PROPOSAL AND RECOMMENDATION

For the reasons stated above, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** the United States' ***Motions*** (ECF Nos. 12 and 15), **DISMISS** Plaintiff's Complaint (ECF No. 1) and remove this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to the *pro se* Plaintiff and counsel of record.

ENTER: July 30, 2018.

Omar J. Aboulhosn
United States Magistrate Judge